UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-20434-CR-WILLIAMS

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

NABIL IBRAHIM ABU NAHLAH,

    Defendant,

_____/

## DEDEFENDANT NABIL IBRAHIM ABU NAHLAH'S SENTENCINGMEMORANDUMAND REQUEST FOR ANALTERNATIVE SENTENCE

Defendant, **NABIL IBRAHIM ABU NAHLAH**, through undersigned counsel respectfully submits this Sentencing Memorandum and Request for an Alternative Sentence and as grounds therefore, states as:

I. **INTRODUCTION:**

**NABIL IBRAHIM ABU NAHLAH,** hereinafter referred to as "Mr. Nahlah" or "Nabil", is 49-yeara-old, was born in Kuwait, moved to Jordan during the Gulf War then eventually emigrated to the United States in the late 1990's eventually becoming a naturalized

United States citizen in October of 2007.  He is also a citizen of Jordan.

As the Court will glean from the Composite Exhibit volume of letters of support, Mr. Nahlah has been and continues to be a dedicated and amazing parent, family member and great friend to so many. The recurrent theme throughout this outpouring of support is that Mr. Nahlah is someone that so many people have depended upon for financial, emotional, love and spiritual support; always giving of himself so that others can benefit from his guidance and assistance. Perhaps in his zealousness to assist and take care of others, at some point during the COVID-19 crisis, his judgment became clouded under the immense pressure and urgency of the pandemic, and he made a very poor choice in the process.  His lack of prudent judgment by way of some extremely unfortunate and unwise decisions led him to the crossroads he finds himself at today.

I have been fortunate to know Nabil quite well in the last few years and throughout our many discussions I find him to be extremely remorseful, embarrassed, and regretful regarding the horrendous decisions he made which he immediately accepted full

responsibility for prior to his coordinated surrender and arrest.

As to the offense charged herein, Mr. Nahlah immediately admitted his culpability by way of his guilty plea to an Information, Rule 11 Plea Agreement and the Factual Proffer he signed. He has remained on bond since his arrest and has been fully compliant with the conditions of his release.

Pursuant to *U.S. v. Booker*, 543 U.S. 220 (2005), the federal sentencing process has adopted a three-step approach. (See Fed. R. Crim. P. 11(M), amended December 1, 2007, and Amendment 741 of the Sentencing Guidelines, effective November 1, 2010). First, the Court is to determine the *advisory* guideline range. With that said, the written Plea Agreement [ECF No. 15] at paragraphs 7(a) and 7(b) states that the parties agree that the applicable guideline is § 2B1.1, the base offense level is 6, with an 8-level increase based upon the amount of **<u>actual</u>** loss.  Prior to the execution of the Plea Agreement, the parties had conferred and recognized that due to the speculative nature and difficulty in establishing the intended loss, it was determined that the most accurate barometer for loss calculation would be <u>actual</u> loss.  The PSR suggests that the intended loss is much higher thereby

justifying an additional 10-level increase in the guideline calculations. This amount in controversy is the subject of Defendant's filed Objections to PSR [ECF No. 21] and further supported by the Government's Response to Objections [ECF No. 23]. Additionally, the PSR suggests another 4-level increase should apply pursuant to 18 U.S.C. § 670(a)(2). This is also the subject of a defense objection and supported as well by the Government's submission in response thereto. The parties recognize that these proposed guideline calculation estimates in the Plea Agreement are not binding on the Court. However, should the Court be inclined to sustain defendant's objections as to the intended loss amount and 670 enhancements, overrule the objection to the "sophisticated means" enhancement[1], the advisory guideline calculation subtotal would be **16**. After a 3-level decrease for Mr. Nahlah's complete and timely acceptance of responsibility as well as an additional 2-level reduction as a zero-point offender would leave him with a level **11**, Category One resulting in a guideline range of **8-14**

Second, the Court is to consider if there are any factors that

---

[1] The Defendant intends to withdraw his objection to the sophisticated means enhancement prior to sentencing. This despite no allegations of complex multi-layer concealment, the existence of hidden accounts or shell companies.

4

may warrant a departure from the *advisory* guideline range. As before *U.S. v. Booker,* 543 U.S. 220 (2005), the court is to depart when it is warranted under the facts and circumstances of a particular case. "The application of the guidelines is not complete until the departures, if any, that are warranted are appropriately considered," *U.S. v. Jordi,* 418 F. 3d 1212, 1215 (11th Cir. 2005). The PSR fails to identify any factors that may warrant a downward departure from the *advisory* guideline range. Although Mr. Nahlah believes such factors do exist, through counsel, he will ask this Court to consider them as sentencing factors under 18 USC § 3553(a).

Lastly, the Court is to consider all the sentencing factors of 18 USC § 3553(a) and impose a sentence which is "reasonable" and not greater than necessary to achieve the sentencing objectives set forth in 18 USC § 3553(a). As set forth more fully below, Mr. Nahlah, through counsel, believes there are factors worthy of this Court's consideration.

## II. SENTENCING SUBMISSION AND REQUEST FOR ALTERNATIVE SENTENCE:

Mr. Nahlah has pled guilty to the Information thereby

5

admitting to violating 18 USC §1031. The PSR suggests a total offense level 25, and as a criminal history category I, the *advisory* guideline range is 46 to 57 months.[2]

Notwithstanding the above, this Court is fully aware the guidelines have been *advisory* since 2005, *U.S. v. Booker,* 543 U.S. 220 (2005), followed by *Gall v. United States,* 128 S. Ct. 586, and *Kimbrough v. United States,* 128 S. Ct. 558, both decided on December 10, 2007. *United States v. McBride*, 511 F. 3D 1293 (11TH Cir. 2007), made clear that district courts are only required to give "some weight" to the advisory guidelines, as they are to the other 18 USC §3553 factors. To that end, through counsel, offers the following:

**Speedy Resolution of Criminal Liability:** Mr. Nahlah appeared for a coordinated surrender and was arrested on November 18, 2024. Prior to his arrest, Mr. Nahlah, through counsel, had agreed to the filing of an Information in lieu of Indictment. The Defendant then plead guilty and was adjudicated guilty on February 21, 2025.

---

[2] Subject to defense PSR objections.

**History and Characteristics of Defendant:**

**1. Nabil Abu Nahlah's Personal and Family History:**

As stated earlier, Mr. Nahlah emigrated to the United States in the late 1990's and became a naturalized U.S. citizen in October 2007. That same year he married his wife, Malak Ghaboon and they have two children in common. His wife, who lives in Jordan with their daughter, had been working as a middle school teacher until she was diagnosed with uterine and breast cancer in August 2024. She has been undergoing chemotherapy treatment since then. Mr. Nahlah's mother-in-law has also been diagnosed with cancer and is undergoing chemotherapy as well. Mr. Nahlah's mother also suffers from serious health conditions, and Nabil is her primary means of financial support.

From 2004-2006 Nabil was contracted by the U.S. Army Special Forces as an Arabic translator in the Middle East. During his deployment in 2005, Nabil suffered serious injuries as a result of his team's involvement in a firefight in Iraq and subsequent bombing of the Humvee he was traveling in which was blown up by an IED. Nabil spent approximately a month in a hospital due to the serious physical injuries he sustained and was also

7

diagnosed with PTSD from the horrific ordeal he experienced. Nevertheless, he does not seek sympathy, but the physical pain remains to this day, as do the psychological wounds from the trauma. He continues to live with chronic pain and PTSD.

Upon his return to the United States, Nabil maintained several odd jobs while also putting himself through college earning a bachelor's degree from St. Thomas University. At the age of 40, Nabil began law school while raising two children and working three jobs – as an Uber driver, waiter and cashier – to support his family. He persevered despite the odds, graduated on the Dean's List, and passed the bar exam on his first attempt. It was the proudest achievement of his life. While in law school, Nabil received several commendations for his *pro bono* outstanding Commitment to Public Service. His Deans's List Certificate and public service commendations are included as an exhibit hereto. That his sentencing coincides with the anniversary of his law school graduation adds a deep emotional resonance to these proceedings. He is reflecting on how far he has come – and how far he could fall. He eventually earned a Juris Doctorate from St. Thomas University in 2018 and was admitted to the Florida Bar

that same year. He has been working ever since primarily for insurance defense firms. He has been a member in good standing of the Florida Bar having no history of disciplinary action. It should be noted that upon the imposition of sentence in this case Mr. Nahlah will immediately surrender his license to practice law and will consequently be disbarred by the Florida Bar. He currently lives in Miam Beach since 2018 with his 16-year-old son and will then need to seek alternative employment to financially support his son as well as his ailing wife and daughter back in Jordan.

Nabil has received job offers outside the legal profession in both Washington, D.C. and New York – opportunities that will allow him to support his family with dignity. He is fully prepared to start over.

**Conclusion:** Throughout these letters as well as the many other attached, the resounding common thread is that Nabil is a very giving individual, whether it be raising his children, supporting his infirmed wife financially, spiritually and emotionally while she undergoes cancer treatment along with her mother, as well as assisting friends, and his extremely generous time, attention and

9

financial commitment to those in need. From everything I have gleaned from the people closest to Nabil he is a selfless, caring and extremely cherished person whose only desire and motivation is not based on greed, but rather grounded in intense, burning desire to help those in need. Whatever money he has legitimately earned over the years, has been consistently earmarked for the benefit of others. I strongly believe that the measure of this man is rooted in the amazing things he has consistently demonstrated that he has done for others, and not these unfortunate transgressions that he allowed himself to get caught up in and which will haunt him for the rest of his life.

Mr. Nahlah understands that in fashioning a "reasonable" but not greater than necessary sentence in his case, this Court must consider the nature and circumstances of the offense, 18 USC § 3553(a)(1). Nabil accepted responsibility for his involvement in this offense, he signed a written Plea Agreement and Factual Proffer and quickly pled guilty. With that said, he has done all he could to quickly resolve his criminal liability in this case and he remains profoundly remorseful.

Subsequent to *Booker,* this Court must also consider the

history and characteristics of the defendant, 18 USC § 3553(a)(1). We ask this Court to consider that based upon his accepting responsibility and pleading guilty to the Information, that he will remain a convicted felon for the remainder of his life, immediately lose his professional license to practice law, face possible incarceration, and he will be subject to a restitution order. Mr. Nahlah's punishment in this case will have a far-reaching impact on his life and his children beyond any sentence imposed by this Honorable Court.

Should the Court find that Mr. Nahlah's advisory sentencing range falls within Zone B based upon counsel's PSR objections, we ask this Court to consider a variance to that of a sentence of time served and a period of supervised release be imposed.  In the alternative, we submit that a term of home confinement followed by supervised release will serve as a reasonable but not greater than necessary sentence taking into consideration the seriousness of the offense, need for an adequate deterrence to criminal conduct, protect the public from future further crimes by the Defendant and the need to make restitution.  It should be noted that Mr. Nahlah is in the process of attempting to sell his real property to satisfy the full

amount of restitution as quickly as possible. Undersigned strongly believes that Mr. Nahlah's extremely poor decisions which led to his current situation and its many future implications were isolated in nature and the product of aberrant behavior on his part. I truly do not see Nabil running afoul of the law ever again.

WHEREFORE, Defendant, **NABIL IBRAHIM ABU NAHLAH,** prays that this Honorable Court favorably consider this Sentencing Memorandum and Request for an Alternative Sentence and deviate below the advisory guidelines to a sentence below the advisory guideline range.

    Respectfully submitted,

LAW OFFICES OF PETER S. HELLER, P.A.
Counsel for Defendant, **NABIL ABU NAHLAH**
9100 South Dadeland Boulevard
Suite 1702
Miami, Florida  33156
Tel.  (305) 284-8000
Fax:  (305) 670-0088
Email:  Petersheller@aol.com

By: /s/ Peter S. Heller
    Peter S. Heller, Esq. (Fl. Bar No. 402222)

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on May 10, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

      s/ Peter S. Heller_____